PHINEAS O., NABBY, JABEZ AND BENJAMIN B. SARGEANT, HEIRS OF SAMUEL SARGEANT, PLAINTIFFS IN ERROR, *v.* THE STATE BANK OF INDIANA.

By the strict rules of the common law, a bond of conveyance might be adduced in support of a possession of twenty years held in pursuance of the bond to corroborate such possession against an action founded upon the mere right of entry in the obligor or his heirs.

But when the bond was given to carry out the policy of a State in establishing the seat of justice for a new county, it was proper to allow it to be given to the jury as competent evidence to be weighed by them in expounding the provisions of the statute.

Where a court, acting under a State law, appointed a commissioner to convey the legal title, after the death of the obligor of the bond, and the record of that court

said that proper and legal notices had been given, it was not competent to offer evidence in another court for the purpose of showing that legal notice had not been given.

THIS case was brought up by writ of error, from the Circuit Court of the District of Indiana.

It was an ejectment brought by the plaintiffs in error, citizens of Vermont, against the State Bank of Indiana, under the following circumstances.

By a law passed on the 14th of January, 1824, the Legislature of Indiana provided that whenever any new county should be laid off, five commissioners should be appointed to locate the seat of justice therein, to receive donations in land, and take title-bonds for the conveyance of it to such persons as the county commissioners should direct.

In 1826 the county of Tippecanoe was about to be laid off, and on the 20th of January, 1826, an act was passed creating the county of Tippecanoe, which so far altered the act of 1824 as to substitute a board of five justices of the peace in lieu of county commissioners. But these justices of the peace were not to be appointed until June. The rest of the act was to go into operation on the first Monday in May.

Accordingly, on the first Monday in May, a majority of the commissioners appointed to locate the seat of justice, met and designated Lafayette as the town. On the 4th of May they received two bonds, with the name of Samuel Sargeant as an obligor; in one of which he was the sole obligor, and in the other a joint obligor with other persons. These bonds bound Sargeant to convey the land "to the board of justices of Tippecanoe county that may hereafter be organized, and their successors in office."

On the 8th of July, 1826, the board of justices, having been elected, met and organized. Samuel Sargeant was county clerk and *ex officio* clerk of the board of justices. They received the report of the locating commissioners, and ordered a public sale of the lots for which title-bonds had been given, to take place on the second Monday of the ensuing October.

In the latter part of July, 1826, Samuel Sargeant died. His co-obligors in the bond conveyed their title to the justices, according to the tenor of the bond.

By the act of 1826, it was provided that in case of the death of any person who had executed or might execute such a bond, the obligee might apply to the Circuit Court of the county to appoint a commissioner to convey the title, provided four weeks' personal notice should be given to the heir of the obligor, or certain advertising if a non-resident.

At the term of the Tippecanoe Circuit Court, which was held

in November, 1827, the board of justices prayed the court to appoint a commissioner to convey Sargeant's title; whereupon the court passed an order concluding in the following words, viz.:

"And it appearing to the satisfaction of the court now here, that proper and legal notices have been given of this motion, it is therefore, by the court now here, ordered, that Richard Johnson be appointed commissioner to convey by good and sufficient deed unto the board of justices of Tippecanoe county, or their successors in office, said lots and parcels of ground in pursuance of the aforesaid bonds, in fee-simple, for and on behalf of the heirs of the said Samuel Sargeant, deceased."

On the 5th of April, 1828, Richard Johnson executed the deed.

On the 17th of November, 1846, Phineas O. Sargeant, Nabby Sargeant, Jabez Sargeant, and Benjamin B. Sargeant, heirs at law of Samuel Sargeant, deceased, and resident citizens of Vermont, brought an action of ejectment in the Circuit Court of the United States, for a part of the property, against the State Bank of Indiana.

In May, 1848, the cause came on for trial, when the jury, under certain instructions from the court, found a verdict for the defendant.

The bill of exceptions extended over twenty-five pages of the printed record, and, therefore, cannot be inserted at length.

The plaintiffs having proved a title in Sargeant and their heirship, rested their case.

The defendant gave in evidence the record-book of the justices of Tippecanoe county; the report of the commissioners appointed to locate the seat of justice; the execution of the title-bond; and then offered in evidence the record of the Tippecanoe Circuit Court relative to the execution of the deed by Johnson.

To the production of which aforesaid record in evidence by the said defendant the said plaintiffs then and there objected, upon the following grounds assumed by them, namely: The proceedings were *coram non judice,* and void; as the court had no jurisdiction of the person nor of the subject-matter; the bond being void, the court had no jurisdiction to entertain proceedings upon it; the proceedings were between no parties known at the time to the law in Indiana. There was no legal notice of the proceeding; the preliminary steps were not taken to confer jurisdiction, and jurisdiction never attached; and at the time of making said objection, and before the said defendant had closed its evidence, the said plaintiffs offered to produce in evidence to the court the following authenticated copy of a paper, to wit:

(The paper was a notice published in the newspaper, which was for the heirs to appear at a different time and term from that at which the proceedings were held, and an affidavit of its publication, indorsed " Filed 7th November, 1827," Hoover, clerk.)

To the production of this paper in evidence, the defendant objected.

The defendant then offered in evidence a confirmatory deed, signed by Sargeant's co-obligors in the bond, and by Johnson as representing Sargeant.

To the production of which last-mentioned copy in evidence the said plaintiffs then and there objected, on the grounds assumed by them that the same was void, having been executed without any authority of law, and there being no vendors named in the deed; which said several objections, so made by said plaintiffs as aforesaid, the court then and there overruled, and permitted the said papers and copies, and each of them, so offered by said defendant as aforesaid, to be read in evidence, and they were read in evidence to the jury by the said defendant.

This was all the material testimony on behalf of the defendant.

After the evidence for the defendant had been closed, the plaintiffs proved that the first election for justices of the peace, for Tippecanoe county, was held on the third Monday in June, eighteen hundred and twenty-six, pursuant to the proclamation of the Governor of Indiana in that behalf, and that the commissions of said justices, as appears from the records of the Secretary of State of Indiana, bear date on                ; and that said justices held their first session on the eighth day of July, eighteen hundred and twenty-six, (being Saturday,) as set forth in the foregoing record thereof; and that said justices did not hold any other session, or meet as a board at any other time, until after the death of said Samuel Sargeant.

And after the evidence on both sides had been closed, the said plaintiffs moved the court to charge the jury as follows, to wit:

1. That the title-bond given in evidence by the defendant is void as against Samuel Sargeant and his heirs, for want of an obligee in being capable of being contracted with at the time of the delivery of said bond.

2. That the said title-bond is a nullity as against said Sargeant and his heirs.

3. That the record and proceedings of the Tippecanoe Circuit Court, and the commissioner's deed in pursuance thereof, are wholly void, and did not divest the title of Samuel Sargeant's heirs.

4. That the certified copy of the notice, and proof of publica-tion given in evidence by the plaintiffs, is a part of the record of the proceedings of the Tippecanoe Circuit Court, and as such may explain and qualify the statement in the record, that proof was made that " due and legal notices had been given ; " which said several instructions and each of them the court refused to give to the jury; but charged the jury that the said record of the Tippecanoe Circuit Court is not void, and that the above proof, so produced and given in evidence by the said defendant, is competent evidence to prove a dedication to public use, and the title of the premises in controversy out of the lessors of the plaintiffs.

To which said several opinions and decisions of the court in admitting said evidence, so as above offered by the defendant and objected to by the plaintiffs, and in refusing to charge the jury as moved by the said plaintiffs, as above stated, and to the charge so as above given by the court to the jury, the said plain-tiffs except, and pray that this their bill of exceptions may be signed, sealed, and made a part of the record in this cause, which is done, &c. ; both parties agreeing in open court that in making up of the record, whenever the words " here insert " occur in this bill of exceptions, the clerk shall copy and insert the docu-ments indicated. And that the printed statutes of Indiana, so far as applicable to this cause, shall be deemed and taken as part of the record in this cause, and so considered by the Supreme Court.				JOHN McLEAN. [SEAL.]

Upon these exceptions, the case came up to this court, and was argued by *Mr. Smith* for the plaintiffs in error, and *Mr. White* for the defendant.

*Mr. Smith* for the plaintiffs in error, contended, that the court euffered illegal evidence to go to the jury, as stated in the bill of exceptions, in admitting in evidence the title-bond set forth in the bill of exceptions, because it created at most but an equity, and could not be set up against the legal title in the case, even if valid, and could not legally be given in evidence in the action of ejectment. See 2 Blackford's Rep. p. 309, where the court uses this language : " A person claiming by virtue of a title-bond only, the premises for which an action of ejectment was brought, applied to be made a defendant in the cause. Held, that as the claim was merely of an equitable nature, the application could not be granted."

This case sustains our position, that the title-bond was ille-gally admitted in evidence upon general principles. But we do not rest the question here. We insist that the title-bond was

void for the want of parties *in esse* at the time of its execution, as appears upon its face. It was made payable thus, " Held, and firmly bound unto the board of justices of Tippecanoe county that may hereafter be organized, and their successors in office." There was no board of justices or county commissioners in existence at the time, and no delivery of the bond could then take place. It was therefore void at common law. Shep. Touch. 235; 1 Cruise, 418; 9 Mass. 419; Bacon's Abr. Obl. C; 4 Ohio R. 169. The latter case is precisely in point, the very question having been before the court and decided. The bond was also void as a statutory bond, as the commissioners appointed to locate the county seat were not authorized to take such a bond. The act conferring the powers on these commissioners provides that, "the commissioners shall take a bond to be made payable to the board of county commissioners, and their successors in office." It is clear that the bond which they were authorized to receive was to be made payable to a corporation in existence and its successors, and not to a corporation thereafter to be created, or in other words, they were only authorized to receive a valid common-law bond. It was therefore clearly void as a statutory bond, as well as a common-law bond. This point was expressly decided, as we contend, in the case of John Sloane v. David McConahy, 4 Ohio, p. 169.

2. That the proceedings of Tippecanoe Circuit Court were void, because in this particular it was a court of special and limited jurisdiction, and it had not brought itself within it.

3. That the charge of the court was erroneous, because,

1st. It decides the weight and conclusiveness of the proof, and leaves nothing for the jury to try, whose province it was to weigh the testimony and find the facts, under the charge of the court, as to the law of the case.

2d. The court in effect charges, that the title-bond and other evidence, as given, prove a legal title in the defendant, which we maintain is not the law, and cite the authorities already referred to upon the same question.

3d. The court charges in effect, that the proof in the bill of exceptions sustains this as a dedication to public use of the property in question. If this be so, then we yield the case, provided, a parol dedication can be given in evidence in ejectment to defeat the legal title; but we submit that this was no dedication, and if it was, that a dedication by parol does not carry the fee under the laws of Indiana by which the case must be decided, and therefore a dedication cannot be given in evidence to bar the legal title in the action of ejectment, unless there is an adverse possession of twenty years, which is not pretended or set up in this case.

(The counsel then argued that this was not a dedication.)

*Mr. White*, for defendant in error, contended that as to the objection to the admissibility of the title-bond, because it proved only an equitable title, we say,

It was also admissible, to relieve those proceedings from the imputation of fraud, by showing the bond to have been the act and deed of Samuel Sargeant, and that the consideration for which it was given, was executed.

The title-bond was a part of the transaction, being the form recognized by statute for making donations of land in such cases.

A party in possession under a title-bond, may, when sued in ejectment, produce the title-bond to show that he was entitled to notice to quit. Taylor v. McCrackin, 2 Blackford's Rep. 260.

In Right *ex dem.* Lewis v. Beard, on a contract of purchase (part paid,) Lord. Ellenborough held notice to quit, necessary. 13 East. 210. See 1 Johns. 322; 9 Id. 330.

It was also allowable, to show an adverse possession of twenty years, the conditions of the purchase or grant having been complied with. In 2 Penn. Rep. 454, the court say: " Whether F. went into possession under an equitable title or under no title at all, is immaterial, if he held as his own and denied the right of J."

In Weakley *ex dem.* Yea v. Bucknell, Cowp. 473, Lord Mansfield allowed the party in possession to show an unstamped contract for a lease under which he had held for eighteen years, although the lease had never been executed.

In replying to the remaining objection of the plaintiffs in error against the title-bond, viz. : " that it is void for want of an obligee *in esse* at the time it was made," we would refer the court to the several statutes of Indiana.

(The counsel then referred to several statutes of Indiana.)

It is objected that the record of Tippecanoe Circuit Court cannot be given in evidence, but that the proceedings of that court were void.

The general proposition is so well settled, that the judgment of a court of general jurisdiction cannot be collaterally impeached before another tribunal, that we shall only quote authorities by way of illustrating the peculiarity of the points presented in each case.

2 Binney, 41; 1 Pet. C. C. R. 155; 18 Pick. 393; 15 Ohio Rep. 447; 17 Wend. 483; 2 How. 319; 4 Dana, 429; 10 Pet. 449; 7 Blackf. 547.

As to the paper offered by the plaintiffs, relative to the notice, it was but a loose office paper, and is not certified to be a part of the proceedings.

Mr. Justice DANIEL delivered the opinion of the court.

The facts upon which this case is founded are to the effect following. The legislature of Indiana, having by a law bearing date on the 20th January, 1826, laid off and established the county of Tippecanoe in that State; by the same act appointed four commissioners for the purpose of selecting and establishing a seat of justice for the county thus created, in conformity with the provision of another statute of the State, passed on the 14th of January, 1824, entitled " An act establishing seats of justice in new counties," and with the provisions of other acts amendatory of the law last mentioned. Pending the investigation of the commissioners who took upon themselves the fulfilment of the duties prescribed by the statutes above mentioned, proffers were made to them by various persons, proprietors of land in and adjacent to the town of Lafayette, of certain lots and parcels of land as donations to the county of Tippecanoe, and amongst these proffers was that of the land involved in this suit, then held by Samuel Sargeant, from whom the lessors of the plaintiffs deduce their title. The commissioners having accepted the donations offered as above mentioned, and selected the town of Lafayette as the seat of justice for the county of Tippecanoe, took from the several donors their joint and several title-bond, dated May 4th, 1826, in the penalty of ten thousand dollars payable to the board of justices of the county to be thereafter organized, with condition that these obligors should convey by deed with general warranty to the board of justices, on the 1st day of October, 1826, the lots and parcels of land contained in their respective donations within the town of Lafayette, and took also the separate bond of Samuel Sargeant, conditioned to convey at the same period, by a like deed to the board of justices, another parcel of land of ten acres, adjoining the town, as in the conditions annexed to those bonds set forth. The board of justices appointed by the Governor of Indiana for the county of Tippecanoe, was organized on the 8th day of July, 1826, and on that day received the report of the commissioners appointed by law to select the seat of justice for the county of Tippecanoe, and at the same time received and accepted the joint and several obligation of Samuel Sargeant and others above mentioned; and also the separate bond of Samuel Sargeant, conditioned for the execution of a deed with general warranty to the board of justices for the tract of ten acres of land as before referred to, the said Samuel Sargeant having been chosen their clerk by the board of justices, entered upon the record their acceptance of the title-bonds given by himself and others in his own handwriting. Samuel Sargeant having died before the execution of any deed either by the obligors in the joint and several bond,

or by Sargeant alone, in pursuance of his separate obligation, proceedings were instituted at the November term, 1827, of the Circuit Court of the county of Tippecanoe, for the appointment of a commissioner, for the purpose of conveying to the board of justices the title and interest held by Samuel Sargeant in his lifetime in the lots and parcels of land mentioned in the joint and several bond of Sargeant and others, and in the ten acres of land mentioned in the separate title-bond executed by Sargeant. The Circuit Court appointed Richard Johnson a commissioner, in conformity with the application, and this commissioner, conjointly with all the obligors except Sargeant, executed to the board of justices a deed with general warranty for the lands mentioned in the joint and several bond, and a separate deed for the ten acres of land described in the bond given by Sargeant individually. The proceedings of the Circuit Court of Tippecanoe, upon the petition of the board of justices, and the conveyances ordered by that court, took place in the years 1826 and 1827, and are of record.

In the year 1846, the lessors of the plaintiffs, representing themselves to be heirs at law of Samuel Sargeant, instituted this their action of ejectment against the State Bank of Indiana, as the tenant in possession of lots No. 90 and 132, situated in the town of Lafayette. The said defendant also deducing title mediately from Samuel Sargeant, by purchase from the board of justices for the county of Tippecanoe, no question therefore is raised upon the validity of the title as originally existing in Samuel Sargeant.

At the trial, the lessors of the plaintiffs having introduced evidence to show the death of Samuel Sargeant on the 31st of July, 1826, and that the said lessors were his heirs at law, and evidence also of the value of the property in dispute, there rested their cause.

The defendant then offered in evidence the report of the commissioners appointed under the act of the legislature of January 20th, 1826, to locate the seat of justice for the county of Tippecanoe; the record of the appointment and qualification of the board of justices for the said county in July, 1826; the delivery to them and their acceptance of the title-bonds from the locating commissioners; their petition to the Circuit Court in order to obtain a conveyance of the lands mentioned in the title-bonds; the record of the proceedings of the Circuit Court of Tippecanoe upon the petition of the board of justices, and the conveyances to them made in pursuance of the judgment of that court, as comprised in the foregoing statement of facts. Upon the evidence thus submitted the jury found a verdict for the defendant.

The questions presented for our consideration by this record arise upon exceptions to the rulings of the court refusing certain instructions asked by the plaintiffs with regard to the evidence adduced by the defendant, and in charging the jury upon the law applicable to that evidence as expounded by the court. Thus the plaintiffs prayed the court to instruct the jury,— 1, That the title-bonds given in evidence by the defendant were void as against Samuel Sargeant and his heirs for want of an obligee in existence capable of being contracted with at the time of the delivery of these bonds.

2. That the title-bonds are a nullity as against the said Sargeant and his heirs.

3. That the record and proceedings of the Tippecanoe Circuit Court and the commissioners' deed in pursuance thereof are wholly void, and did not divest the title of Samuel Sargeant's heirs.

4. That the certified copy of the notice and proof of publication given in evidence by the plaintiffs, is a part of the record of the proceedings of the Tippecanoe Circuit Court, and as such, may explain and qualify the statement in the record, that proof was made that " due and legal notice " had been given.

These several instructions the court refused to give, but charged the jury that the said record of Tippecanoe Circuit Court was not void, and that the proof produced and given in evidence as aforesaid by the defendant was competent to prove a dedication to public use, and the title of the premises in controversy out of the lessors of the plaintiffs. It was agreed by the parties in this case that the printed statutes of Indiana, so far as they are applicable to the case, should be deemed and taken as parts of the record in this cause, and be so considered by this court.

In considering the three first charges asked for by the plaintiffs, this court can perceive no essential difference between them, but regards them as resolving themselves into the single objection of the want of an obligee or grantee capable of receiving any legal rights from the acts of Samuel Sargeant; for it follows necessarily that if any legal or equitable rights were invested or transferred by the title-bonds delivered by Sargeant in his lifetime to the commissioners, such rights could not remain in his heirs. The fourth charge required of the court presents quite a different question, and one going rather to the mode or form by which the title to the property has been transferred or ratified, than to the foundation of the right or title itself.

Although, if tested by the rules of law applicable to conveyances of real property, bonds like those executed and delivered by Samuel Sargeant in his lifetime could not confer a legal title, yet if adduced in support of a possession of twenty years,

held as in this instance, in pursuance of the express condition of those bonds, they would seem to corroborate such possession against an action founded upon the mere right of entry in the obligor or his heirs.

But these bonds should not be judged of by the strict rules of the common law, nor by the general principles applicable to uses and trusts in the conveyance of legal titles, but should be interpreted according to the local policy of the community which called them into existence, and which has defined both their objects and effects. Whatever these bonds were designed to be,—whatever purposes they were, by the local policy and laws of Indiana, intended to accomplish in respect to the makers thereof, or the beneficiaries therein named, this court should endeavor to effectuate.

By the general law of Indiana, approved January 14th, 1824, entitled "An act to establish the seats of justice in new counties," it is provided in section first, "that whenever any new county shall be laid off, five commissioners shall be appointed, whose duty it shall be to locate the seat of justice in such new county, to receive donations in land, and to take bond or bonds of any person proposing to give any such lands, payable to the board of county commissioners and their successors in office, and conditioned for the conveyance of such tract or tracts of land so given or sold to such person as the county commissioners shall appoint to receive the same, which bond or bonds the said commissioners shall deliver to the county commissioners, together with a plain and correct report of their proceedings, containing a particular description of the lands so selected for the county seat." By section fourth of the same act, it is declared "that the county commissioners, so soon as the report of the locating commissioners is received, shall appoint a county agent, who shall receive deeds for such donated lands, and lay them off into lots," &c. The act of the Indiana legislature creating the county of Tippecanoe, passed January 20th, 1826, by section seventh, so far alters the general law of 1824, for the establishment of new counties, as to substitute a board of five justices of the peace, who shall constitute a board for transacting all other county business, as well as the duties theretofore devolving on the board of county commissioners in organizing a new county. This statute was to take effect on the 1st of March, 1826, and, by its second section, the board of commissioners were appointed by name for the purpose of fixing a permanent seat of justice for the county on the first Monday in May, 1826. The election or appointment of the board of justices for the county of Tippecanoe was, by the proclamation of the governor, to take effect not until the      day of June following. The grants

or donations to the locating commissioners having been authorized by law from the first Monday in May, 1826, and the grantees or ultimate beneficiaries, viz., the board of justices, not being chosen or their election authorized until after the     day of June, 1826, if the objection alleged to the donations made or received by the locating commissioners, viz., the absence of a competent obligee or grantee, be sustained, then the whole legislation of the State upon this subject, and the obvious purposes of that legislation, must be defeated.    Such a result, however, can hardly be reconciled with either the provisions or the purposes of the legislation of Indiana in reference to this subject; for by the general law of that State, approved January 14th, 1824, regulating the establishment of new counties, we find it provided that the commissioners appointed to locate the seat of justice in a new county, and to receive the donations and to take the bonds mentioned in that law, are required, together with their report, to deliver said title-bonds to the county commissioners.    This delivery, therefore, of the bonds so taken, must have been by this general provision intended to refer to some period after these county commissioners or board of justices had come into existence.    We think there can be no question as to the power of the State to create or authorize a contract which should operate in this mode.

The acts of the board of commissioners for selecting the county seat, those of the board of county justices, and of the donors of lands to the county, all conform to this construction. Thus in the case before us, the title-bonds were taken by the former board, were by them subsequently, together with their report, delivered to the board of justices; and Samuel Sargeant, who had previously deposited the title-bonds executed by himself with the former board, and who had been subsequently appointed the clerk of the county justices, in his character of clerk, certifies the record of these proceedings.    We think, therefore, that the Circuit Court for the District of Indiana properly refused to pronounce the bonds executed by Samuel Sargeant, and the proceedings of the board of commissioners and of the board of justices void, and correctly allowed them to be given to the jury as competent evidence to be weighed by them in expounding the provisions of the statutes of Indiana above referred to.

Should it be conceded that the execution of the title-bonds by Samuel Sargeant in his lifetime, and the proceedings on the part of the board of commissioners and of the board of justices did not, under the statutes of Indiana, confer a legal title on the county, or clearly divest the title of Sergeant; yet, these acts standing alone and unconnected with the proceedings of the Circuit Court of Tippecanoe, show an equity on the part of the

county which clearly authorized them to call for the legal title from Sargeant. They show a written contract formally entered into and solemnly recognized by him, and a fair equivalent or consideration for that contract, in the enhanced value of property arising from the establishment of the seat of justice, forming an obligation from which neither Sargeant nor his heirs could withdraw without the perpetration of a gross fraud.

This brings us to a consideration of the fourth charge asked of the Circuit Court in the trial below, and of the decision of the court thereupon, involving the regularity of the proceedings at the suit of the county justices in the Circuit Court of Tippecanoe, in order to perfect their title stipulated for in the bonds executed by Samuel Sargeant. The court was requested by the proposed charge to say to the jury, that a certified copy of a notice and proof of publication offered in evidence by the plaintiffs, were a part of the record of the proceedings of the Tippecanoe Circuit Court, and, as such, might explain and qualify the statement of the record itself, that proof was made that "due and legal notices had been given," which charge the court refused to give, but charged the jury that the said record of the Tippecanoe Circuit Court is not void, and that the above proof, so produced and given in evidence by the said defendant, is competent evidence to show a dedication to public use, and the title of the premises out of the lessors of the plaintiffs.

Of the correctness of the Circuit Court in refusing this last charge, we entertain no doubt whatever. With a view of determining the propriety of this rejection by the Circuit Court, it may be proper here to refer to an act of the legislature of the State of Indiana, approved on the 20th of January, 1826, entitled " An act amendatory of the law for the better advancement of justice," (under which statute the decision of the Circuit Court of Tippecanoe, impugned by the plaintiffs below, was made.) By the tenth section of this statute it is provided, " that whenever any person or persons who shall have executed, or hereafter shall execute his or their obligation for the conveyance of any real estate to any person or persons, body politic or corporate, shall die intestate or without having made the necessary provisions by will for the conveyance of such estate, it shall be lawful for the obligee or obligees in such bonds, or his or their assignees, to apply to the Circuit Court of the county in which such real estate lies, to appoint a commissioner to convey the same in conformity with the conditions of the said obligation, by a deed to be by such commissioner executed, of the same tenor and effect as the deceased obligor was bound to make in his lifetime; provided the person or persons making such application as aforesaid, shall first give four weeks personal notice to

the heir or heirs of such obligor or obligors if residents of the State, and if non-residents, then three months notice of such application, by advertising the same three weeks successively in the nearest public newspaper to which the said real estate is situate — and the commissioner shall," &c., &c.

Under the authority of the section just quoted, application in the name and on behalf of the county of Tippecanoe was made by petition to the judges of the Circuit Court of that county, for the appointment of a commissioner to convey the lands mentioned in the title-bonds executed by Sargeant, and which he had failed to convey in conformity with those obligations. In setting forth the action of the court upon this petition, the record contains the following statement: "Came into court Peter Hughes, agent for the county of Tippecanoe by his attorneys, and moves the court now here to appoint a commissioner to convey real estate under and in conformity to a title-bond given by Samuel Sargeant, deceased, and others therein named in his lifetime, to the board of justices of Tippecanoe county and their successors in office, which bond he now here files, for the conveyance of certain town lots in the town of Lafayette in the said bond mentioned and numbered. Also files a bond given by the said Samuel Sargeant deceased, by himself, for the conveyance of ten acres of land east and adjoining the town of Lafayette, to the board of justices of the county and their successors in office, and it appearing to the court now here, that proper and legal notices have been given of this motion, it is by the court now here ordered, that Richard Johnson be appointed commissioner to convey by good and sufficient deed unto the board of justices of Tippecanoe county and their successors in office, the said lots and parcels of ground, in pursuance of the aforesaid bonds in fee-simple, for and on behalf of the heirs of Samuel Sargeant, deceased." It is this record of the decision of the Circuit Court of Tippecanoe county, and particularly that portion of it which states that the decision was pronounced after proper and legal notices had been given to the heirs of Samuel Sargeant, that the plaintiffs asked of the court to charge was irregular and void, upon the strength of a paper purporting to be a notice which they urged the court to consider as a part of the record of the proceedings of the Tippecanoe Circuit Court, and as such, explaining and qualifying the statement in that record, that proof was made to the court of due and legal notice to the heirs of Samuel Sargeant.

With respect to the propriety and regularity of this application to the Circuit Court, we would remark in the first place, that the mere fact of a paper being found amongst the files of a cause, does not of itself constitute it a part of the record of the

cause. In order to render it a part of the record it should form some part of the pleadings in the cause, or be brought under and ingrafted upon the action of the court by some motion from the parties. Without this, such a paper can no more be a portion of the record than would the knowledge of facts on the part of a witness, who had been summoned and not examined, or the oral testimony given to a jury, and not noted by exception or otherwise. There is nothing in the record of the Circuit Court of Tippecanoe to show that the paper on which this fourth charge asked for by the plaintiffs is founded, was ever brought to the notice of the court last mentioned. The real veritable record informs us, that legal and sufficient notice was given to the heirs of Samuel Sargeant, but whether by this paper or in what other mode (except that it was legal and sufficient) we are not told, and are not at liberty in this case to indulge in inferences against the verity of the record. It is a principle well settled, too, in judicial proceedings, that whatever may be the powers of a superior court, in the exercise of regular appellate jurisdiction, to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and reëxamined collaterally by a distinct tribunal, one not acting in the exercise of appellate power. To permit the converse of this principle in practice, would unsettle nine tenths of the rights and titles in any community, and lead to infinite confusion and wrong. In support of a principle so obvious and of such universal acceptation as is that just above stated, a recurrence to cases would seem to be wholly unnecessary. We will mention, however, one in this court, which, from its direct appositeness to the question now under consideration, may be regarded as conclusive. The case alluded to is that of Grignon's lessee *v.* Astor. 2 Howard, 319. This was an action of ejectment brought by the heirs of a decedent to recover lands which had been sold by the personal representative, who, by the law of Michigan, was, in the event of a deficiency of the personal assets to pay debts, authorized to sell the real estate, upon a license granted him to effect such sale, but to be obtained only upon proofs prescribed by the statute to be made before the court by which the license to the administrator was to be granted. The objection to the title of the purchaser was, that by the record of the court granting the license to the administrator to sell, it was apparent that the prescribed evidences of deficiency of the personal assets had not been adduced, and that the court had therefore exceeded the powers with which it was clothed by the statute. The language of the record is as follows: " The petition of Paul Grignon, administrator on the estate of Pierre Grignon, late of the county of Brown, deceased,

was filed, praying for an order from the court · to authorize him to dispose of the real estate of the said Pierre. In consideration of the facts alleged in said petition, and for divers other good and sufficient reasons, it is ordered, that he be empowered as aforesaid."

In overruling the objection made to the title derived from the personal representative, this court said, p. 339 : " The record of the County Court shows that there was a petition representing some facts by the administrator who prayed for an order of sale; and the court took those facts into consideration, and for these and divers other good reasons, ordered that he be empowered to sell." Again this court say, p. 340: "After the court has passed on the representation of the administrator, the law presumes that it was accompanied by the certificate of the judge of probate, as that was a requisite to the action of the court. Their order of sale was evidence of that or any other fact which was necessary to give them the power to make it; and the same remark applies to the order to give notice to the parties. This is a familiar principle in ordinary adversary actions, in which it is presumed after verdict, that the plaintiff has proved every fact which is indispensable to his recovery, though no evidence appears on the record to show it; and the principle is of more universal application in proceedings *in rem* after a final decree by a court of competent jurisdiction over the subject-matter." Again say the court, " The record is absolute verity, to contradict which, there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party obtaining it." Several decisions by this court upon this particular point will be found cited in the opinion above quoted as delivered by the late Justice Baldwin, who concludes that opinion with the following striking and cogent observations : " We do not," said that learned judge (alluding particularly to the case of Vorhees *v.* The Bank of the United States, 10 Pet. 473,) " think it necessary, now or hereafter, to retrace the reasons or the authorities on which the decisions of this court in that case and those which preceded it rested; they are founded on the oldest and most sacred principles of the common law. Time has consecrated them; the courts of the States have followed, and this court has never departed from them. They are rules of property on which the repose of the country depends ; titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral actions, or none can know what is his own; and there are no judicial sales around which greater sanctity ought to be placed, than those made of the estates of decedents by order of those courts to whom the laws of the States confide full jurisdiction

over the subjects." By the doctrine thus ruled the decision of the Circuit Court is fully sustained, and, upon a review of the whole case, it is the opinion of this court that the decision of the Circuit Court be, and the same is hereby, affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Indiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.