## KLOPP v. OVERLADE, Warden.
### No. 1116.

District Court, S. D. Indiana, Indianapolis Division.

May 28, 1946.

On Motion for Admission to Bail June 8, 1946.

Hayden C. Covington, of Brooklyn, N. Y., for plaintiff.

B. Howard Caughran, of Indianapolis, Ind., for defendant.

LINDLEY, District Judge.

Petitioner, having been classified by his local board in Class IV—E as a conscientious objector to military service and having been physically examined, was ordered to report to his local board for induction into work of national importance. Failing to comply, he was indicted and convicted for failure to report and the conviction affirmed by the Circuit Court of Appeals for the Sixth Circuit in Klopp v. United States, 148 F.2d 659. No application for certiorari was filed and he was, thereupon, in execution of the judgment, incarcerated in the United States penitentiary at Terre Haute, Indiana. He has now filed his petition here for a writ of habeas corpus aver-

ring that he is illegally confined in that the order of the local board classifying him as a conscientious objector instead of a minister, was arbitrary and capricious and, therefore, void; that, by the refusal of the District Court to permit him to introduce evidence in support of his claim of exemption under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., as a minister of religion, he was deprived of a fair and impartial trial. These same contentions were made in the District Court at the time of the trial and in the Court of Appeals upon appeal and decided against him.

The evidence discloses that petitioner registered under the Selective Training and Service Act on October 16, 1940. In his questionnaire filed with his board June 9, 1941, petitioner stated that he was a university graduate, then working as secretary-treasurer for the Reed-Klopp Company, retail furniture dealer, at Middletown, Ohio, doing the work of auditor, bookkeeper, paymaster, manager and proprietor-employer, hiring some 20 paid workers, at an average weekly earning of $180. To the question as to what other business he was engaged in, he replied "minister," saying that he had been a minister since June, 1940, but not formally ordained. He further stated that he was a conscientious objector to both combatant and noncombatant military service.

On June 12, 1941, he filed a special form prescribed for conscientious objectors, stating therein that, because of his belief in the Bible, he was opposed to participation in any kind of military service, whether combatant or noncombatant. In the required form as to his occupation, on June 16, 1942, he stated that he was then secretary-treasurer of the furniture store; that he had been employed therein for ten years, beginning in 1932, and that his duties were overseeing and assisting in bookkeeping, accounting, general office work, payroll handling and recording, and handling files, reports and claims. He said that work for which he was next best fitted was that of newspaper photography in which he had had three years experience; that he had worked as radio-repairman and in writing advertising for a retail furniture store. Amongst occupations for which he said he thought he might be qualified, petitioner checked the words "accountant" and "administrative official," and under the heading "other professional or scientific occupation," he inserted the word "ministerial work." On October 12, 1942, the registrant filed an affidavit as to his financial status and dependents, stating that he had two children living with his divorced wife and that in the year before he had earned $18,000 as secretary-treasurer of his company. In a later affidavit, dated September 3, 1943, he said that during the preceding year he had earned $16,500 in the same occupation and in operating a farm of 122 acres, and that his earnings on that date amounted to $250 per week.

Petitioner was originally classified in Class III—A, later in Class "I" and finally on November 15, 1943, in Class IV—E, conscientious objector. Following this, he wrote his board requesting a personal conference. Permission was granted, and he appeared before the board on November 29, 1943. He supplied the board with his affidavit of November 26, 1943, certificates of several members of Jehovah's Witnesses relative to his religious activities, certificates of others as to their opinion as to his status in the organization, a letter from the Watchtower Bible and Tract Society indicating that he was then assistant company servant, a copy of a magazine called "Consolation" and a letter from his father. The latter document stated that petitioner was "certainly a key men in our organization, as he has been employed regularly since July, 1928, is in charge of all financial operations and handles all of the many tax problems as well as the many regulations to which we are subjected." His absence, said his father, "would complicate and largely nullify our tax and regulation procedures." The affidavit averred that it was possible, if petitioner was compelled to leave the store, its operation would have to be discontinued and the entire stock disposed of at auction or otherwise, and that such an event would be a calamity to the community. The record of the board discloses further that the registrant stated at that time that he

devoted some 35 to 38 hours per week to the discharge of his duties with the company and that he owned a farm which was operated by a hired man.

The board informed petitioner on December 2, 1943, that, after further consideration of his case since his personal appearance, it had declined his request for reclassification in IV—D, minister of religion. The record discloses that on January 15, 1944, petitioner's file was sent to state headquarters for examination, that that office returned the file January 15, 1944, setting forth the reasons which, in the opinion of that office, justified the local board in refusing to classify the registrant in Class IV—D. Upon appeal to the appeal board, petitioner's classification was affirmed by a unanimous vote. Following this on February 10, 1944, he was assigned to work of national importance under civilian direction and directed to report for such work on March 10, 1944. He failed to report. Having been indicted, he pleaded not guilty, was tried by a jury and sentenced to prison and fined.

■ The foregoing facts are undisputed and I deem them material because, as I understand the law, even if I have jurisdiction to review the facts, there is only one question which I can reach and that is whether there was substantial evidence before the administrative body to support the classification made. I am not permitted to substitute my judgment for that of the administrative body upon questions of fact, to weigh the evidence or pass upon questions of credibility. Irrespective of the details of the evidence presented to the board by petitioner as to his averred ministerial vocation, I could not, even if I should believe him to be a minister of the gospel within the Act, set aside the board's order, hold it arbitrary or capricious or treat it as a nullity, in view of the fact that substantial evidence was presented to support the board's classification as a conscientious objector and its conclusion that he should not be classified as a minister. Upon the facts, therefore, I find that there was substantial evidence before the administrative body to support the finding and that its order consequently is not a nullity. "The provision

making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." Estep v. United States, 66 S.Ct. 423, 427.

The petitioner raised before the trial court all the questions that he now presents. He asked that court to hear evidence as to the merits upon his claim of being a minister. The court refused to admit the evidence and this was assigned as error in the Circuit Court of Appeals. That court affirmed the judgment. No further review of the errors assigned was ever applied for.

■ The remedy of habeas corpus can not be used as a substitute for writ of error. In Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009, the court said: "That the trial court had jurisdiction to try and punish the appellant for the offense with which he was charged is not disputed. The attempt is collaterally to impeach the record, showing upon its face that a lawful jury was duly impaneled, sworn and charged. Appellant's remedy, as suggested in the mandamus proceeding, was by writ of error. He did not avail himself of it, and, whatever may have been the cause or excuse for not doing so, habeas corpus cannot be used as a substitute. (Citing cases.) * * * The court below was right in ruling that it was without authority to review or set aside the action of the trial court, for, as this court said in Sargeant v. State Bank of Indiana, 12 How. 371, 385, 13 L.Ed. 1028: '* * * Whatever may be the powers of a superior court, in the exercise of regular appellate jurisdiction, to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and re-examined col-

laterally by a distinct tribunal, one not acting in the exercise of appellate power.'" See also Rea v. McDonald, 5 Cir., 153 F.2d 190, certiorari denied 66 S.Ct. 820.

So here the District Court had jurisdiction to try petitioner. It made certain rulings excluding evidence which petitioner claimed were erroneous, yet the Circuit Court of Appeals affirmed. If petitioner wished to contend that the Circuit Court of Appeals was in error, he should have prosecuted his remedies to that end. This he failed to do. I can not, as a trial judge in habeas corpus proceedings, review errors of a court of coordinate jurisdiction.

I am further of the opinion that petitioner has never exhausted his administrative remedies. Upon that question three opinions of the Supreme Court are decisive: Estep and Smith v. United States, supra; Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 348, 88 L.Ed. 305. Indeed, the Falbo case, I think, controls. There the registrant had been classified as a conscientious objector and had failed to obey the local board's order to report for assignment for work of national importance, as here. The Supreme Court said: "Only after he has exhausted this procedure is a protesting registrant ordered to report for service. * * * If he has been classified a conscientious objector opposed to [combatant or] noncombatant military service, * * * he ultimately is ordered by the local board to report for work of national importance." The registrant is under obligation to obey the order but, said the court, "in neither case is the order to report the equivalent of acceptance for service. * * * The selectee may still be rejected at the induction center and the conscientious objector who is opposed to noncombatant duty may be rejected at the civilian public service camp. The connected series of steps into the national service which begins with registration with the local board does not end until the registrant is accepted by the army, navy, or civilian public service camp. Thus a board order to report is no more than a necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently." The facts are parallel here.

But, says petitioner, in the Estep case the court concluded that the administrative remedies had been exhausted. There two registrants, directed to report for induction, reported at the time and place indicated. One was accepted by the navy but refused to be inducted, claiming that he was a minister; the other was accepted by the military but refused to be inducted, claiming that he was a minister. The court said of the Falbo case: "In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, we held that in a criminal prosecution under § 11 of the Selective Training and Service Act of 1940, 54 Stat. 894, 50 U.S. C.App. § 311, 50 U.S.C.A.Appendix § 311 a registrant could not defend on the ground that he was wrongfully classified and was entitled to a statutory exemption, where the offense was a failure to report for induction into the armed forces or for work of national importance. We found no provision for judicial review of a registrant's classification prior to the time when he had taken all the steps in the selective process and had been finally accepted by the armed services. The question in these cases is whether there may be judical review of his classification in a prosecution under § 11 where he reported for induction, was finally accepted, but refused to submit to induction." It distinguished the Falbo case in these words: "Falbo v. United States, supra, does not preclude such a defense in the present cases. In the Falbo case the defendant challenged the order of his local board before he had exhausted his administrative remedies. Here these registrants had pursued their administrative remedies to the end. All had been done which could be done. Submission to induction would be satisfaction of the orders of the local boards, not a further step to obtain relief from them." Thus in the Falbo case, as in the present case, the registrant failed to report for work of national importance, while in the Smith and Estep cases each of them reported as directed but refused to accept induction. In the Falbo case the Supreme Court found that the administra-

tive processes had not been exhausted. In the Smith and Estep cases it found that they had been exhausted. Petitioner here belongs in the Falbo category and not in that of Smith and Estep.

Petitioner urges, however, that at the time of the Falbo decision physical examination of the registrant followed his notice to appear for assignment to work, whereas at the time petitioner was ordered to report, the law had been so changed as to require his physical examination before he was ordered to report. Thus, says petitioner, nothing remained for petitioner to do. But I do not understand that this change has altered the legal principles involved. Petitioner had not yet been accepted, either at the local board or at the camp to which he was to be assigned. He had not yet been accepted into service of any kind. As the Supreme Court said in the Falbo case, he might "still [have been] rejected * * * at the civilian public service camp," and, as the court said further in that case, "the connected series of steps into the national service which begins with registration with the local board does not end until the registrant is accepted by the army, navy, or civilian public service camp." It may be that under the present statutes petitioner was required to be examined physically before he was ordered to work but the examination did not, in the view of the Supreme Court, constitute full compliance by him with the necessary requisites to acceptance by the Government.

Petitioner relies upon Billings v. Truesdell, supra [321 U.S. 542, 64 S.Ct. 741], but I find nothing in that decision which militates against my conclusion here. There the court said: "The examination of men at induction centers and their acceptance or rejection are parts of that process. Induction marks its end." The court held that the processes have not been completed until the registrant has appeared in response to his notice to report for work of national importance. The court referred to the language of the regulations upon the subject of induction as follows: "At the induction station, the selected men found acceptable will be inducted into the land or naval forces." The court further ruled:

"Moreover, it should be remembered that he who reports at the induction station is following the procedure outlined in the Falbo case for the exhaustion of his administrative remedies. Unless he follows that procedure he may not challenge the legality of his classification in the courts. But we can hardly say that he must report to the military in order to exhaust his administrative remedies and then say that if he does so report he may be forcibly inducted against his will. That would indeed make a trap of the Falbo case by subjecting those who reported for completion of the Selective Service process to more severe penalties than those who stayed away in defiance of the board's order to report." And the court concluded as follows: "These considerations together indicate to us that a selectee becomes 'actually inducted' within the meaning of § 11 of the Act when in obedience to the order of his board and after the Army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed."

I conclude, therefore, not only that petitioner has no standing in this court in view of the fact that he did not complete the administrative processes prescribed for registrants but also that, upon the merits, the record discloses substantial evidence to support the administrative board's conclusion with which this court has no right to interfere. Furthermore assignments of error upon the trial court's part in the criminal trial are properly cognizable only in proceedings directly reviewing the judgment entered; they can not be considered in a habeas corpus proceedings.

Accordingly it is ordered that the petition for a writ of habeas corpus be denied.

This memorandum is expressly made a part of my formal findings and conclusions of law filed this day as fully as if set forth herein in express words.

On Motion for Admission to Bail.

The relator has filed a motion seeking admission to bail pending appeal, notice of which has been given. The motion has been argued by counsel for the relator and by the United States Attorney.

Under Rule 26 of the United States Circuit Court of Appeals, for the Seventh Circuit, paragraph 2, the prisoner may be remanded to the custody from which he has been taken by the writ, or detained in other appropriate custody, or enlarged upon recognizance, with surety, as to the court rendering the decision may appear fitting. Apparently this is the only court in which an order can be entered admitting the prisoner to bail. See United States ex rel. Thomas v. Day, Commissioner of Immigration, 2 Cir., 29 F.2d 485 at 487. Obviously, under this rule this court is endowed with discretion as to whether the motion should be allowed.

I think my decision upon the petition for writ of habeas corpus is correct but I make no claim to infallibility. Counsel for the prisoner is very insistent that I have decided the issue wrongly and that I should have held that Petitioner's case comes within the Estep case rather than within the Falbo case. The question is close and the Court of Appeals or the Supreme Court may disagree with my conclusion. If either should disagree and the decision be reversed, the prisoner will have remained in the penitentiary during all of the time consumed in furthering and securing disposition of the appeal. If he is wrongfully confined he should not be in the penitentiary. If he is rightfully confined, even if I should admit him to bail, he will have to return to complete his sentence. He does not appear to be of malevolent disposition but a business man imbued with the idea that he was exempt from the draft and, though he was convicted in the District Court and the Court of Appeals for the Sixth Circuit affirmed the conviction and this court has denied his petition for writ of habeas corpus, the question is not entirely free from doubt and the Government can in no wise be injured by admitting him to bail.

Accordingly, therefore, in my discretion I allow the motion and direct that prisoner be admitted to bail pending his appeal upon giving bond in the sum of $20,000 properly conditioned according to law, to be approved by the court.