# CHARLESTON.

## BURDETT, GUARD., v. CAIN, ADMR.

### March 1, 1875.

A guardian is not authorized to file a bill in equity in his own name as guardian to recover the distributive share or interest of his wards in the personal estate of their ancestor. In such case the bill should be dismissed. The suit should be brought in the name of the infants by their next friend who may be guardian.

Appeal from a decree of the circuit court of Roane county. The opinion of Court contains a statement of the case.

The Hon. Robert S. Brown, judge of said circuit court, presided at the hearing below.

*Henry C. Flesher* and *William H. Hogeman* for the appellant.

*Benjamin H. Smith,* for the appellees.

HAYMOND, PRESIDENT.

The plaintiff, on the 28th day of June, 1869, as guardian of Macklin E. Cain, Elmore E. Cain and Willie Ann Cain, infant children of William T. Cain, deceased, commenced a suit on the equity side of the circuit court of Roane county, against Alfred Cain, administrator of William T. Cain, deceased, Gamaliel Board, Macklin E. Cain, Elmore E. Cain, Willie Ann Cain and Roswell R. Chancey.

Afterwards, at July rules, 1869, the plaintiff filed his bill against the said defendants, in which he alleges that

William T. Cain, late of the said county, died intestate, leaving Sarah Jane Cain, his widow, who has since intermarried with defendant, Gamaliel Board, and Macklin E. Cain, Elmore E. Cain and Willie Ann Cain, infant children, and a large estate consisting of both real and personal property; that on the 19th day of March, 1866, the defendant, Alfred Cain, was duly appointed administrator of the estate of the said Wm. T. Cain, deceased, and that on the same day he, together with defendant, Roswell R. Chancey, his security, entered into and acknowledged bond in the penalty of $5,000, conditioned according to law; that the personal property produced to the appraisers of said estate duly appointed, was by them returned at the sum of $3,888.25; that in addition to the property appraised as aforesaid the administrator received other valuable property, goods and chattels of the intestate, consisting of an interest in a certain mill, notes, accounts, &c., worth, in the aggregate, about $1,500; that the administrator sold a part of the goods and chattels appraised at $2,330.45, which appears by the sale bill; that the personal estate received by the administrator was more than sufficient to satisfy the just debts and funeral expenses of the decedent; that the administrator has made no settlement of said estate; that the plaintiff was on the ——— day of ———, 1866, duly appointed, by the proper authority, guardian for said Macklin E. Cain, Elmore E. Cain, and Willie Ann Cain, infant heirs of said William T. Cain, deceased, and that they are the only legal heirs of said intestate, and each of them are still infants. The plaintiff prays that an account be taken, under the direction of said court, of the personal estate and effects of said intestate possessed by or which came to the hands of the said Alfred Cain, as administrator as aforesaid, or the hands of any other person, by his order or for his use, and also an account of the intestate's debts and funeral expenses; that the intestate's personal estate be applied in due course of administration, and that the

residue thereof may be ascertained, and that the plaintiff be paid as guardian as aforesaid the respective shares of his said wards of such residue. He also prays for general relief.

No demurrer was filed to the bill. . A guardian *ad litem* was appointed for the infant defendants, who filed a mere formal answer in which he says the infants are of tender years, and unable to protect their interests and he asks that the interests of the infants may be protected, and that strict proof be required in all things concerning their interests.

Alfred Cain, the administrator, filed an answer, and amended answer, in which he claims, substantially, that he has fully administered the estate and owes plaintiff nothing as guardian.

The court referred the cause to a commissioner to settle the accounts of said administrator as such, &c. Subsequently, such proceedings were had in the cause that at a term of said court held for said county on the 15th day of August, 1871, the court decreed in favor of the plaintiff against said Alfred Cain, administrator, &c., for $1,-200.02 with interest from the first day of April, 1871, and also rendered a decree in favor of Jane Board, the widow, against said Alfred Cain, administrator as aforesaid, for the sum of $296.63, with interest from the 1st day of April, 1871, but the amount decreed in favor of plaintiff and said widow is subject to a credit mentioned in the decree.

Some exceptions were filed to the report of the commissioner which it is unnecessary to notice.

From this decree the said Alfred Cain has appealed to this Court.

It is now here argued before us, that the circuit court erred in rendering the said decree, and that the court instead of decreeing against the appellant, as it did, should, at the hearing of the cause, have dismissed the plaintiff's bill, because the plaintiff, as guardian of the infants in his bill mentioned, is not authorized to file a

bill in his own name for the purposes and objects therein

mentioned. In considering this question, I do not propose to enter, in this opinion, into a minute examination and history of the legislation of Virginia, from which we have derived our legislation, upon this subject. Nor do I propose to enquire into the different kinds of guardians there were, or are, by the common law, and the prerogatives and powers of each over their wards, or the real and personal property of their wards. That has already been done by others, ably and satisfactorily, and I shall content myself by referring to authorities which I deem respectable and satisfactory upon the subject. Much of the legislation of Virginia upon the subject of guardians will be found well stated in the opinion of Judge Daniels, in the case of *Ham v. Ham,* 15 Gratt., 74. However, very much light cannot be gathered upon the question under consideration from that opinion. In The case of *Truss v. Old,* 6 Rand, 556, it was *held* that "Possession is indispensably necessary to support trespass *quare clausum fregit.* Guardians in socage and testamentary guardians, (although they have no beneficial interest,) yet have a legal interest, and the *possession* of the ward's land during the guardianship. If, therefore, a person trespass on the lands of an infant, and cut and carry away his trees, without license, the ward cannot maintain trespass, but the guardian may, and must account to the ward for the damages recovered. If the trees are cut and carried away by permission of the guardian, no trespass is committed, and the infant, even after the guardianship has ceased, cannot maintain trespass for the act. The wrong must be compensated to the ward by the guardian. It seems that if timber trees, growing on the inheritance of the ward, are thrown down by tempest, or otherwise, they become personal property, and the guardian has a legal right to sell them, as being perishable and of no value except as a subject of sale, and in such case the infant cannot bring trover for them."

1875.
January Term.

Burdett,
Guardian,
v.
Cain, Admr.

Judge Green, in delivering the opinion of the court, in that case, says: "Possession is indispensably necessary to support an action of trespass *quare clausum fregit*, and whether an infant can maintain such an action for a trespass done to his lands, whilst he is in the wardship of his guardian, depends on the question, whether, in point of law, the possession is in the guardian or ward." The decision of that case was made in 1828, in an action of *quare clausum fregit*, brought by the ward. While the possession of the land is not in the ward during his wardship, still I apprehend there can be no question that the legal title and beneficial interest therein, is vested in him during that time, as well as afterwards. The guardian in the case I have quoted was not a testamentary guardian, but was appointed guardian and qualified by the county court of Norfolk, and it seems to have been considered by the court that the guardian had the same power and authority in relation to the estate of his ward as a guardian in socage had by the common law. See revised code of Virginia of 1820, chapter one hundred and eight; Tate's Digest, page four hundred and seventy-five and four hundred and seventy-six, sections one and three. Robinson in the 2nd vol. of his (old) Practice, page one hundred and fifty-five, says: "The statute of Virginia concerning guardians recognizes only two descriptions of guardians, who have any power over the property of their wards; guardians in socage, and those appointed by the father under that statute, who are put, in all respects, upon the footing of the former; our statute, in this respect, being a copy of the statute of 12 Car. 2 ch. 14." The maxim that the next of kin to whom the land cannot descend, is to be guardian in socage, was justly repudiated by Lord Macclesfield in *Dormer's case*, 2 P. Wms. 262. He said it prevailed in barbarous times, before the nation was civilized; that now it would be shocking to think that any brother or uncle would commit murder upon his own brother or nephew to get his estate.

Chancellor Kent, in the case of *Mary Livingstone, a Lu-*
*natic*, agreed with Lord Macclesfield, 1 Johns. (N. Y.)Ch. 436. See *Coleman's Case*, 4 Hen. & Munf. 506.

At the July term 1849, of the court of appeals of Virginia it was decided that,

"1. A second guardian of an infant has no authority to file a bill in his own name, against a former guardian for an account of his transactions in relation to the ward's estate.

2. An infant may, by his next friend, call the acting guardian, or any preceding guardian, to account by a bill in chancery : But the bill must be in his own name by his next friend."

This decision was made in the case of *Lemon, Guardian v. Hansbarger*, 6 Gratt. 301. In that case Allen, Judge, delivered the opinion of the court, and he says : "The court is of opinion that the guardian has no authority to file a bill in his own name against a former guardian, for an account of his transactions in relation to the ward's estate : The bill should have been filed in the names of the infants by their next friend or guardian. The guardian is liable to an action of account at common law by the infant after he arrives at age ; and the infant while under age may, by his next friend, call the acting guardian, or any preceding guardian, to account by bill in chancery. Whilst there is nothing in the scope of the authority of the guardian which empowers him to sue in his own name in such a case, much inconvenience would flow from such a proceeding. If the infant should attain full age before the termination of the controversy, the same could not be continued in his own name, he being no party to the suit ; and the same result would follow upon the removal or death of the guardian."

The code of 1849, of Virginia took effect on the first day of July, 1850, and chapter one hundred and twenty-eight of that code embraces the legislation upon the subject of guardians and wards. That chapter of said code was in force in this State until the 1st day of April, 1869,

when the Code of this State of 1868, took effect, and chapter eighty-two of our Code is a copy of chapter one hundred and twenty-eight of the said code of 1849. In July, 1852, two years or more after the code of Virginia of 1849 took effect, the court of appeals of Virginia in the case of *Sillings v. Bumgardner, Guardian*, 9 Gratt. 273, again decided that "a guardian is not authorized to file a bill in his own name to obtain possession of his ward's estate, but must file it in the name of the ward by his next friend."

This case, like the one under consideration, was brought by the guardian, in his own name, against the administrator, &c., to recover his ward's distributive share of the personal estate of his ancestor. In the case last cited, Judge Moncure, who delivered the opinion of the court, says; "If he (the guardian) intended to assert the claim of his ward as a distributee, the suit should have been in the name of the infant by his next friend, and not in the name of the guardian, even though he be described in the bill as 'guardian of the ward.' A guardian is not authorized to file a bill in his own name to obtain possession of the property of his ward, but must file it in the name of the ward as his next friend." It is true the case was brought in the court below before the code of 1849 took effect, and, as in the case before us, the plaintiff (the guardian) obtained a decree in the inferior court in accordance with a prayer of the bill, but that decree, two years after the code of 1849 took effect, was reversed by the court of appeals. It seems to me if the court of appeals of Virginia had considered the rule established by the case in 6 Gratt. as being changed by section seven of chapter one hundred and twenty-eight of the code of 1849, some reference would certainly have been made to the fact in the opinion in the case in 9 Gratt. Some reference was made by counsel for appellee, to the report of the Revisors of the code of 1849. This report has not been furnished, and is not to be found in the State Library. It might shed additional light upon the sub-

ject. Still I think the principles established by the cases cited, in cases like the one before us, are correct, and I feel disposed to follow them until I am satisfied that they are changed by legislation.

The Code of this State was adopted after the decision in 9 Gratt. Our legislation, upon the subject of guardian and ward is derived and copied from the legislation of Virginia, and in interpreting it I feel inclined to follow the rulings of the court of appeals of Virginia, upon that subject. Judge Moncure, in the opinion delivered by him in the case in 9 Gratt, says: "But ought the bill to be dismissed, or the case remanded, and permission given to amend the bill and make the proper parties? In the case of *Lemon, Guardian, v. Hansbarger,* 6 Gratt., 301, the bill was dismissed; and that would be the proper course in this case if the appellee had no further connection with or interest in the case than as guardian of the infant. A bill filed by a sole plaintiff having no interest, whatever, in the subject matter of the suit must be dismissed." It is singular if the Legislature meant to change the rule established by the court of appeals of Virginia upon the subject that it did not make provision for continuing a suit by the guardian in the name of the infant, when he became of age, and for the revival or continuance of the suit, in some practical form, in case of the death, removal, or resignation of the guardian. No such provision has been made. Provision has been made for reviving or continuing a suit for or against a party before insane, the powers of whose committee have ceased. Fourth section, chapter one hundred and twenty-seven of Code. Under the view I have taken the plaintiff, as guardian of said infant children, cannot maintain this suit, and under the authorities cited the bill should have been dismissed by said circuit court, and it is, therefore, unnecessary to examine any other question argued in the cause, as they do not fairly arise.

37

For the foregoing reasons the decree of the circuit court of Roane county, rendered in this cause, on the 15th day of August, 1871, and all decrees rendered therein prior to that date, must be reversed and annulled. and the appellant (Alfred Cain) recover against the appellee (Elijah Burdett) his costs here expended in this Court about the prosecution of his appeal. And this Court proceeding to render such decree as the said circuit court ought to have rendered in this cause, it is adjudged, ordered and decreed that the plaintiff's bill be dismissed, and that the defendants recover against the plaintiff their costs about the defense of this suit expended.

The other Judges concurred.

DECREE REVERSED AND BILL DISMISSED.