# CHARLESTON.

### STRAIGHT *v.* ICE.

Submitted June 6, 1904—Decided October 18, 1904.

1. INSANE PERSON—*Committee.*
    A second committee of an insane person may maintain a suit in his own name against the estate of a deceased committee to recover from it money chargeable to the first committee as such. (p. 62).

2. INSANE PERSON—*Committee.*
    A suit in equity in the name of the committee of an insane person to recover a debt may be revived in the name of the administrator of the insane person upon his death. (p. 63).

3. EQUITY—*Revival without Sci. Fa.*
    A suit in equity may be revived in the name of the proper representative of a dead plaintiff, without notice of *scire facias,* on motion. (p. 63).

4. INSANE PERSON—*Committee.*

> If one is appointed a committee of an insane person, though without notice to the insane, and accepts and acts as such, he may be sued for account of money received by him as such by color of his appointment, though the appointment be void. (p. 64).

Appeal from Circuit Court, Marion County.

Bill by Golden A. Straight, committee, against J. C. Ice, executor, etc. Decree for plaintiff, and defendant appeals.

*Affirmed.*

B. L. BUTCHER and W. S. MEREDITH, for appellant.

U. N. ARNETT, H. C. DESHIELDS and G. A. VINCENT, for appellee.

BRANNON, JUDGE:

Fielding R. Ice was appointed committee for Pinkney Straight, an insane or imbecile, and acting as such received money belonging to Straight. While Ice was such committee he died, leaving a will giving his property, real and personal, to his children, and appointing J. C. Ice his executor. Afterwards Golden A. Straight was appointed as second committee of Pinkney Straight, and he brought a chancery suit in the circuit court of Marion county, in his name as committee as plaintiff, against the executor and children of Fielding R. Ice to compel the settlement of his account, as such former committee, to compel his estate to pay the sum with which it was chargeable on account of money received by said Fielding R. Ice as committee, to convene all his creditors, of whom the bill alleged there were a number, and alleging that the personal estate was not sufficient to pay such debts, and to subject certain real estate left by Ice to the payment of such debts. The case went to a commissioner to settle the accounts of Fielding R. Ice as committee and report what sum was due from him as such, and settle the account of J. C. Ice, his executor, and to report the land of Fielding R. Ice and report debts against the estate. The commissioner reported several debts against the estate of Ice, among them one in favor of Pinkney Straight due from Ice as his committee of $822.24, which the court reduced to $638.35,

which it decreed against his estate, and decreed his land to be sold for the payment of that and other debts.

Pending said suit said insane died, and on motion of Golden A. Straight, who had been appointed his administrator, the cause was revived in his name without notice or *scire facias.* An appeal was taken by J. C. Ice, executor.

It is claimed that the bill should have been dismissed on the demurrer, on the ground that a second committee cannot sue the estate of a former one for settlement, or for money in the hands of the former committee. For this point we are cited *Lemon* v. *Hansbarger,* 6 Grat. 301, and *Silling* v. *Bumgardner,* 9 *Id.* 273, the first holding that a second guardian cannot file a bill in his own name against a former guardian for an account, but the suit must be in the name of the infant by a next friend, and the second holding that a guardian cannot sue in his own name to get possession of his ward's estate. *Burdette* v. *Cain,* 8 W. Va. 282, holds the same. Those cases do not apply in this case. The legal title to an infant's estate is in him, not the guardian, the guardian merely having its custody and management. and where statute does not enable him to sue in his own name, he must vindicate his ward's rights by suit in the ward's name. 9 Ency. Pl. & Prac. 929. In the Code 1819, volume 1, chapter 108, I see no provision for suit in the guardian's name. and those Virginia cases were under that Code. Section 32 provided for suit in the infant's name. Being in the same chapter it showed that only the infant could sue. Nor do I see any provision for suit in the guardian's name in Code 1899, chapter 82. The rule of these Virginia cases, as to guardians, is still the rule in West Virginia. *Lawson* v. *Kirchner,* 50. W Va. 344. But as to a committee of an insane a different statute applies. Code, chapter 58, section 37, says that such committee "shall take possession of his estate, and may sue and be sued in respect thereto, and for the recovery of debts due to or from the insane person." This clearly enables the committee to sue in his own name for the recovery of a debt due the insane from a former committee. That such is the capacity of a committee appears from *Johnson* v. *Chapman,* 43 W. Va. 639; *Bird* v. *Bird,* 21 Grat. 712; *Hinton* v. *Bland,* 81 Va. 588.

Did the death of the insane person end the suit? That death ended the powers of the committee. Like death cessation of the

powers of the committee abated the suit. 4 Minor, 795. It was held in the cited cases of *Lemon* v. *Hansbarger, Silling* v. *Bumgardner, Lawson* v. *Kirchner* and *Burdette* v. *Cain,* that a suit in the name of a guardian could not be revived in case of the majority of the ward or death of the guardian. The ward gets no estate from the guardian by succession, survivorship, descent or otherwise. The ward is not a party. So, I would think, would be the case with a committee losing his powers by the death of the lunatic, if it were not for Code, chapter 127. Section 4 provides that a *scire facias* to revive may be sued "for or against a party before insane, the power of whose committee have ceased." Under this, if a lunatic should become sane, whereby the powers of his committee would cease, a revival could be had for or against the former lunatic. It does not say that revival may be made for or against the lunatic's adminis- trator; but as the statute is remedial, having for object a change in common law, which abated, without right of revival, on death or other cause of abatement, suits of a sole plaintiff, I think we can say that as the suit could be revived for or against the luna- tic, so it can be for or against his administrator. A preceding clause would allow a suit in the name of a party becoming in- sane to be revived in the name of the committee; and so I think if the powers of the committee cease, revival should be allowed in the name of the administrator of a lunatic dying. This statute does not include guardians, and hence the cases above cited do not apply to the case of a lunatic. Hence there is no error in the revival in the name of the administrator of the in- sane.

There was no need of a *scire facias* or notice of revival be- cause said section 4 dispenses with them when the party whose powers cease is plaintiff.

If the suit is at law in the name of a sole plaintiff, it may be so revived; if in equity, it can be whether there are one or more plaintiffs.

I do not see why counsel tax us with investigation of the as- signment of errors that there was no service of process or order of publication as to Alva N. Ice and John Ice, when decrees state that such order was published and posted and the order itself appears.

The bill says that Ice made two bonds as committee, with

Brummage and Sturns as sureties, and as they are not parties, this is assigned as error. The bill asked no relief against them, but was a bill only against assets of Ice, the party primarily liable. They were not necessary parties. *Hedrick* v. *Hopkins,* 8 W. Va. 167.

It is assigned as error that equity has no jurisdiction because there is adequate relief at law. I am of the opinion that it has long been settled that a bill to recover a debt against a decedent's estate, settle his estate, subject real and personal assets to pay his debts, averring insufficiency of personalty, could be maintained. Could you sell land in an action on the bond?

It is scarcely necessary to notice the point that precipe shows a suit to February rules, 1899, before Ice died. It is said this should have caused dismisal on demurrer. Is the precipe part of the bill? Or even of the record? But the summons shows its date to be 3d January, 1900, returnable to February rules, 1900.

It is assigned as error that it does not appear that notice of application for the appointment of Ice as committee was given to Pinkney Straight. It does not lie with Ice, who moved and accepted the appointments, to deny its validity when called to account for money received under it. Equity holds him as a trustee. He is *de facto* committee, or committee *de son tort,* liable to account, though the appointment were void. He received the money by color of his office. *Houseal* v. *Gibbs,* 23 Am. D. 186.

No debt reported is specifically excepted to, as required by decisions requiring specifications, except the debt decreed for the amount chargeable to the estate of Ice as committee. As to that there is no dispute, there is no ground for dispute, as to the two items of debt. The only controversy is as to whether Ice was allowed a sufficient set-off for keeping the insane person. This depends on much conflicting evidence, and is always largely in its nature a matter of different opinions, as that evidence demonstrates in this particular case. The commissioner made the estate certain allowances, and the circuit court increased the allowance, and thus diminished the debt to the relief of the estate. We cannot overturn the report and decree on this mere question of fact on conflicting evidence and overrule both the commissioner and judge. *Stewart* v. *Stewart,* 40 W. Va. 65.

Decree affirmed.                                    *Affirmed.*