Syllabus.

## Richmond.

HOWARD AND ANOTHER *v.* LANDSBERG'S COMMITTEE.

March 12, 1908.

Absent, Buchanan, J.

1. COUNTY COURTS—*Jurisdiction—Judgments—Collateral Attack.*—The former county courts of this State were, in respect to purely judicial powers, courts of general jurisdiction, and their judgments are presumed to be right and cannot be collaterally assailed.

2. JUDGMENTS—*Collateral Attack.*—In an action of ejectment by the committee of a lunatic against a purchaser of the lunatic's land which was sold under a judicial proceeding against a former committee, objection cannot be made that the lunatic had no notice of the application for the appointment of his former committee, and the silence or incompleteness of the record of the court appointing the committee will be of no avail in a collateral attack on such appointment. Judgments of courts of. general jurisdiction, acting within the scope of their authority, are not open to collateral attack.

3. INSANE PERSONS—*Adjudication—Irregularity—Restoration—Estoppel.* If a lunatic who has had no notice of the appointment of his committee comes into court and asks that his committee be required to restore to him such of his property as he has in his hands, on the ground that he has been restored to sanity, instead of demanding to have the proceedings set aside by reason of their alleged irregularity he thereby solemnly admits of record that the proceedings against him were valid, and will not be thereafter permitted to impeach them to the prejudice of an innocent purchaser of his land, even though he did not appear until after the land had been sold.

4. DEEDS OF COMMISSIONERS—*Recitals—Presumption.*—If the recitals in a deed from a commissioner of a court are sufficient to show that the sale was regularly made in accordance with the decrees of the court directing it, then by express terms of section 3333a, Code of 1904, the deed is *prima facie* evidence that such sale was regularly made

VOL. CVIII—11.

and that the other recitals of the deed are true, and it is unnecessary to introduce any portion of the record in support of such recitals until such presumption has been overcome.

5. Insane Persons—*Parties—Committees—Guardian Ad Litem.*—In a suit to subject the lands of a lunatic to the payment of his debts, the lunatic is not a necessary party, when he has a committee clothed with absolute power over him and his estate, together with authority to sue and be sued with respect to such estate. In a proceeding affecting the property rights of an insane person, it is the duty of the court, if he have no committee, to appoint a guardian *ad litem* to represent and protect his interest, but if he has a committee the appointment of a guardian *ad litem* is wholly unnecessary, except only where there is a conflict of interest between the committee and the lunatic.

Error to a judgment of the Corporation Court of the city of Newport News, in an action of ejectment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*S. Gordon Cumming,* for the plaintiffs in error.

*Ashby & Read,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

On the 17th day of December, 1886, upon the application of his wife, the county court of Elizabeth City county appointed P. W. Phillips as committee of Julius Landsberg, who had theretofore been adjudged a lunatic and committed to the Eastern Lunatic Asylum, but revoked the powers of Phillips as committee, by an order entered February 1, 1887, and committed the estate of the lunatic to Andrew Williams, sheriff of the county of Elizabeth City. Subsequent to the entry of this last mentioned order, a chancery suit was brought in the Circuit Court of Warwick county by Wm. S. Howard against Andrew Williams, sheriff, and as such committee of Julius Landsberg,

praying a sale of a certain house and lot in Newport News, the property of the lunatic, to satisfy a debt due by him to the plaintiff.   To that suit Julius Landsberg was not, *eo nomine,* made a party.

The sale asked for was decreed, and made by Thomas Tabb, special commissioner of the court for the purpose, and the property bought by Wm. S. Howard, who received a deed to the lot from Tabb, commissioner, dated September 25, 1888; and Howard took possession of the property under the deed, and continued in possession thereof until his death in 1892, and thereafter up to a few months before the trial of this suit his widow and sole heir, plaintiffs in error, received through the hands of the officers of the court, appointed in a creditor's suit to settle the estate of said Wm. S. Howard, deceased, the rents accrued from the property; so that the property had been in the open, notorious and adverse possession of the decedent, Howard, his widow and sole heir at law, respectively, and the officers of the court, from September, 1888, and taxes thereon had been regularly paid by the Howards or their representatives to the time of the institution of this suit in September, 1905.

Julius Landsberg was discharged from the asylum, as restored to sanity, in March, 1890, and remained at large, engaging in such employment as he saw fit to undertake, including the duties of a United States postmaster, until July, 1899, when he was again committed to the asylum.

On May 19, 1890, Landsberg appeared in the County Court of Elizabeth City county, produced the certificate of the superintendent of the asylum that he was restored to sanity, and upon his motion an order was made that his committee surrender to him such estate as was then in the committee's hands; therefore, as plaintiffs in error contend, the statute of limitations then began to run in favor of Howard, the grantee in the deed from Tabb, commissioner, from March, 1890, and continued to run, notwithstanding the recurrence of Landsberg's insanity in 1899.

That Landsberg had a good and fee-simple title to the lot in question is not controverted; and this action in ejectment was brought by his present committee, appointed upon Landsberg being recommitted to the asylum in 1899, against plaintiffs in error to recover possession of the lot; defendant in error (plaintiff below) claiming under a deed to Landsberg in 1884 from the Old Dominion Land Company, while plaintiffs in error (defendants below) claim under the deed from Tabb, commissioner, to Wm. S. Howard in 1888; and, the case having been submitted to the trial court without the intervention of a jury, its judgment was for the defendant in error.

The first error assigned is to the ruling of the trial court permitting the plaintiff to amend his declaration; but we deem it only necessary to say, with respect to this assignment, that in the opinion of this court the ruling was not error. Nor do we, for the reasons hereinafter appearing, deem it necessary to consider the question whether or not plaintiffs in error have been in the "actual or constructive" possession of the lot of land in controversy long enough to bar defendant in error in this action.

The contention of defendant in error which prevailed in the trial court is that the orders of the County Court of Elizabeth City county appointing P. W. Phillips and afterwards Andrew Williams, sheriff, committees of Julius Landsberg, are null and void because made without notice to Landsberg, and, therefore, the proceedings in the chancery suit against Andrew Williams, sheriff, and as such committee of Landsberg, could not operate to divest Landsberg of his property, and invest plaintiffs in error with the title thereto.

We are not to be understood by anything said in this opinion as deciding whether or not a lunatic must have notice before a valid order can be made by a court, exercising the ·functions of a court of general jurisdiction, appointing a committee of his estate, as that question is not necessarily to be decided in this case. The first question for our determination is whether or

not the orders of the County Court of Elizabeth City county, called in question, can be assailed collaterally and declared void, as has in effect been done by the judgment complained of.

That our late county courts, with respect to purely judicial powers, were courts of general jurisdiction, and their judgments presumed to be right and unimpeachable in a collateral proceeding, however erroneous they may be, has again and again been declared by this court; one of the latest expressions of the court being in the well considered opinion by Buchanan, J., in *Ches. &c. Ry. Co.* v. *Washington &c. R. Co.,* 99 Va. 715, 40 S. E. 20.

In that case, the opinion in the case of *Sargeant* v. *The State Bank,* 12 How. 371, 13 L. Ed. 1028, is quoted from, wherein it was said: "It is a principle well settled, too, in judicial proceedings, that whatever may be the powers of a supreme court, in the exercise of regular appellate jurisdiction, to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and re-examined collaterally by a distinct tribunal, one not sitting in the exercise of appellate power. To permit the converse of this principle in practice would unsettle nine-tenths of the rights in any community, and lead to infinite confusion and wrong."

Nothing is better settled than that the judgments and decrees of a court of general jurisdiction, acting within the scope of its authority, are presumed to be right, until the contrary appears, and are not open to collateral attack; and this is so, even though the party against whom, or in whose favor, the judgment or decree was rendered was dead at the time. Such a judgment or decree is unassailable in collateral action, not because a judgment rendered without notice is good, but because the law does not permit the introduction of extrinsic evidence to overthrow that, which for reasons of public policy it treats as absolute verity. The record is conclusively presumed to speak the truth, and can be tried only by inspection.

*Witcher* v. *Robertson,* 78 Va., 602; *Warder* v. *Tainter,* 4 Watts (Pa.), 270; *Yaple* v. *Titus,* 41 Pa. St. 195, 80 Am. Dec. 604; *Carr* v. *Townsend's Ex'ors,* 63 Pa. 202; *Holt* v. *Thatcher,* 52 Vt. 592; *Jennings* v. *Simpson,* 12 Neb. 558, 11 N. W. 580; *Taylor* v. *Snow,* 47 Tex. 462, 26 Am. Rep. 311; *Pugh* v. *Mc-Cue,* 86 Va. 476-7, 10 S. E. 715.

Silence or incompletness of the record of the county court appointing committees of the lunatic, Landsberg, will not avail in a collateral attack upon them. 1 Black on Judgments, secs. 271, 274; 1 Freeman on Judgments, secs. 132, 257. For the reasons therefor, see *C. & O. R. Co.* v. *Wash. R. Co., supra,* and also 1 Black on Judgments, sec. 276; 1 Freeman on Judgments, sec. 135.

So steadfastly has this court adhered to the principle upheld in *C. & O. Ry. Co.* v. *Wash. &c. R. Co., supra,* that a judgment of a court of general and competent jurisdiction could not be attacked in a collateral proceeding, that in *Robinson* v. *Allen,* 11 Gratt. 786, it was held, that an order of the county court admitting a will of a married woman to probate could not be collaterally attacked, although at the time when the order was entered a married woman could not make a valid will. Says the opinion in that case: "It was suggested, however, by the appellee's counsel in the argument here, that inasmuch as it appears on the face of the paper that Catherine Bradford was a married woman at the time of executing it, it cannot have the effect of a will; and that she must be regarded as dead intestate. This objection could have had no force in this suit, even if made in the court below; for it is well settled by the decisions of this court, that the sentence of a court of probate of competent jurisdiction, admitting a will to probate, is conclusive evidence of the due making thereof, and that it cannot be denied in any collateral proceeding touching the will; that its validity can be tested only by resorting to the means provided by law for that specific purpose."

In *Pulaski Co.* v. *Stuart &c.,* 28 Gratt. 872, the principle is

again recognized, and it was there stated, that where a court of general jurisdiction acts within the scope of its general powers its judgment will be presumed to be in accordance with its jurisdiction and cannot be collaterally impeached.

In *Gridley* v. *College of St. Francis Xavier,* 137 N. Y. 327, 33 N. E. Rep. 432 (decided 1893), the opinion says: "When the proceedings leading to the appointment of the committee were introduced, the defendant's counsel objected to them on the ground that, on the face of the papers, the court never acquired any jurisdiction of the proceedings. The objection was overruled, and the papers were received in evidence. It is now claimed, and quite strenuously argued, by the counsel for the defendant, that the proceedings were utterly invalid, because no notice of them was given to Ann Eliza, the idiot. There are two answers to this objection: * * * * "

"The Court of Common Pleas of the city and county of New York is, for the purposes of such a proceeding, a court of general jurisdiction (Const., art. 6, s. 12; Code, s. 263, subd. 8); and, therefore, to uphold its jurisdiction, it may be presumed that all the proper notices were served upon the idiot, and even that she was present in court at the time any proceeding was taken, in the absence of anything in the record showing that she was not present in court, or that the notices were not served. It is one of the maxims of the law that 'nothing shall be intended to be out of the jurisdiction of a superior court but that which expressly appears to be so.' Hence, though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed, upon a collateral attack, that the court, if of general jurisdiction, has acted correctly, and with due authority, and its judgment should be as valid as though every fact necessary to jurisdiction affirmatively appeared. Freem. Judgm. sec. 124. * * *

"This is a collateral attack upon the idiocy proceeding in the court of common pleas. It does not appear from the record that all proper notices were not given, and no proof was offered

upon the trial to show that the court did not, in fact, acquire jurisdiction. Therefore, the objection made by the counsel to the proceedings was not well taken, and it follows that the defendant did not obtain title to the real estate by the deed from the idiot, and that the judgment should be affirmed, with costs. All concur."

The case of *Dutcher* v. *Hill*, 29 Mo. 271, 77 Am. Dec. 573, an action in ejectment by a former lunatic, decided by the Supreme Court of Missouri, is directly in point, and the elaborate opinion in the case, upon reason and authority, adheres to the principle for which we are here contending.

In *Rogers* v. *Walker* (Penn.), 6 Pa. 371, 47 Am. Dec. 471, which was also an action of ejectment, the opinion is as follows: "By court, Gibson, C. J. It is scarcely necessary to say that the inquisition and verdict, or the traverse of it, were competent evidence in the first instance. The general principle is that an inquisition of lunacy is *prima facie* evidence against third persons. The exception attempted is that proof was not made before the inquest, that notice of the execution of the commission has been served, pursuant to the statute, on the plaintiff or any of her friends. But the defect cannot be urged to reverse the proceedings collaterally." See also *Kimball* v. *Fisk* 39 N. H. 110, 75 Am. Dec. 215, which was an action of trover by former lunatic.

See also *Martin* v. *Motsinger,* 130 Ind. 555, 30 N. E. 523, where the opinion of the court says: "Jurisdiction of the subject matter does not mean jurisdiction of the given case, but of the class of cases to which it belongs. The court plainly had jurisdiction of the subject matter of the proceeding. Had the court jurisdiction of the person of the appellant and of the case? Jurisdictional questions thus raised must be determined from the face of the record. Work, Pr. & Pl., sec. 1085. The appellant insists that jurisdiction of her person could only be acquired by notice, and the record, showing affirmatively that there was no notice, affirmatively shows want of jurisdiction.

The statute providing for proceedings of this character does not, in terms, require notice, and the procedings may be regular and valid without the service of any notice upon the party."

Our statute—taken from the Code of 1849—sec. 1697, Code of Virginia, provides: "If a person be found to be insane by justices before whom he is examined, or in court in which he is charged with crime, as aforesaid, the court of the county or corporation of which he is an inhabitant shall appoint a committee of him." And sec. 1702 defines the powers and duties of the committee, among which powers are, that he may sue and be sued with respect to the estate of the insane person, and for the recovery of debts due to or from him.

In determining the question under consideration, it is not to be lost sight of that there is a marked distinction with respect to "due process of law," between a proceeding by which a person is adjudged a lunatic, regarded as a proceeding *in personam,* and that of the appointment of a committee of his estate, regarded as *in rem,* as we shall see from the authorities adverted to in the discussion of the next branch of this case.

But upon another ground the defendant in error should not be heard to impeach or inquire into the validity of the order of the County Court of Elizabeth City county appointing A. Williams as committee of Landsberg, nor to assail the validity of the sale of the lot in controversy to Howard under the decrees of the circuit court. As we have seen, on May 19, 1890, Landsberg appeared in the county court, produced the certificate of the superintendent of the asylum that he was restored to sanity, and upon his motion an order was made that his committee surrender to him such of his estate as was then in his hands.

A case directly in point is *Dutcher* v. *Hill, supra,* in which the opinion says: "It·was competent to the court to discharge the lunatic at any time from the care and custody of his guardian, so soon as it was informed of the irregularity of the proceeding. If instead of demanding to have the proceedings set aside by reason of their irregularity, by which the record might

have been amended so as to show that there was no cause of complaint, the plaintiff came into court and asked to be relieved from the custody of the guardian appointed for him, on the ground that he had been restored to his reason, he thereby made a solemn admission of record that the proceedings against him were valid, and he should not now be permitted to say that they were otherwise, and thus take advantage of his neglect to object to the proceedings, when, if the objection had been made, the record might have been amended so as to remove the ground of his complaint; and this argument answers the objection that the plaintiff had no notice of the procedings, so that he could not appeal or take a writ of error.  For although he did not appear until after the land had been sold, yet, when he did appear, he acknowledged the validity of the proceedings under which it was sold; and, having obtained the advantage he proposed by his admission, he should not now be permitted to retract it, to the prejudice of an innocent purchaser."

We are of opinion that the order appointing A. Williams as committee of Julius Landsberg, entered by the County Court of Elizabeth City, was an adjudication upon all the facts necessary to give that court jurisdiction to make the order; that it is to be presumed that the record in which the order was entered was such as to authorize its entry; therefore, the validity of the order cannot be collaterally impeached, or inquired into, in this proceeding; and that this principle applies although the statute providing for proceedings of this character does not require notice to the insane person.

At the trial below, defendant in error, to sustain his case, offered a deed from the Old Dominion Land Company to Landsberg, dated March 24, 1884, and proved that Landsberg took possession of the lot in dispute under that deed (by agreement, he was not required to go beyond the title in the Land Company), and after further showing that Landsberg was then in the Eastern State Hospital, offered no other evidence in chief.  Plaintiffs in error offered the deed from Tabb, commis-

sioner, to William S. Howard, under whom they claimed, as well as other evidence showing that the statute of limitations intervened, and contended that this deed, when in evidence, by virtue of sec. 3333a of the Code, raised the presumption that title to the lot in controversy was lawfully and properly conveyed to William S. Howard under decrees of the Warwick County Circuit Court; and that defendant in error, failing to assail this presumption, it became absolutely conclusive and binding upon him; but the court, as it would seem, disregarded this deed and entered judgment for defendant in error.

. Section 3333a of the Code provides: "Whenever the title to any property claimed under a conveyance or deed, heretofore or hereafter made, purporting to be in execution of a sale under a deed, deed of trust, mortgage, or any judicial proceeding, according to the terms of said deed, deed of trust, mortgage or judicial prcoeedings, is attacked or called into question in any manner, if it shall appear from the face of such conveyance or deed that such sale has been regularly made in accordance with the terms of such deed, deed of trust, or mortgage, or judicial procedings, such deed or conveyance shall be *prima facie* evidence that such sale was regularly made and that other recitals in such deed or conveyance are true."

The deed of Tabb, commissioner, to W. S. Howard, recites, that the sale to Howard was made pursuant to decree of the Circuit Court of the county of Warwick, giving date of the decree, in the chancery cause therein pending under the name and style of *"Wm. S. Howard* v. *A. Williams, Committee of J. Landsberg,"* etc.; that Tabb was appointed special commissioner to make the sale as directed by the decree; that the sale was made after advertisement, as directed by the decree, stating day of sale, and where and how made; that Howard became the purchaser of the lot at a price stated, etc.; that the sale was duly reported by Tabb, commissioner, to the Circuit Court of the county of Warwick; that the said sale was ratified and confirmed by the court by its decree, on a date stated, repeating the

style of the cause above mentioned; that it was further ordered, on a date given, that Howard had paid the whole of the purchase money for the lot or. parcel of land; and that Tabb was appointed special commissioner to convey, by deed of special warranty, to Howard the lot or parcel of land so purchased by him; and then follows a conveyance of the lot, with a description answering to the description of the lot claimed by defendant in error in this suit.

That this deed shows upon its face that the "sale was regularly made," within the meaning and intent of the statute, we do not think there can be any sort of doubt. But it is contended for defendant in error that plaintiffs in error, setting up title through the deed from Tabb, commissioner, must furnish sufficient evidence to support such claim. In other words, that the deed must be accompanied with enough of the record in the chancery cause in which it was made to sustain the recitals of the deed; otherwise, the case made by defendant in error, proving title in Landsberg, is not overcome; and, further, that it was incumbent upon plaintiffs in error to put in enough of the record in the chancery cause to show that Landsberg, or his proper representative, were parties to that cause; and still further, if it were conceded for the sake of the argument, that Williams was properly named as the committee of Landsberg, it was incumbent upon plaintiffs in error to show that Williams was a party to that cause, and to connect Landsberg or his proper representative with the chancery proceedings. If these contentions could be sustained, it would seem quite clear that the statute, sec. 3333a, *supra,* would be of little avail for the purpose for which it was intended.

Prior to the enactment of this statute, it was the settled rule of law that a party claiming under a deed from a special commissioner of a court, a trustee or other fiduciary, had the burden of proving the facts asserted in the deed; and hence the opinion by Buchanan, J., in *Sulphur Mines Co.* v. *Thompson,* 93 Va. 316, 25 S. E. 237, said: "The burden of proving these

facts was upon the party claiming under the deed, and the recitals in the deed, unless made so by statute, were not *prima facie* evidence of the existence of such facts." Following that decision, the statute in force when the decision was rendered was amended (Acts 1897-8, p. 322; Acts 1899-1900, p. 1247) so as to read as hereinbefore set out.

We have stated already the recitals of the deed from Tabb, commissioner, to Howard, which show as fully as can be shown in such a deed, that the sale of the lot conveyed had been "regularly made," within the scope and meaning of the statute; and, upon the deed being admitted in evidence, the burden rested on defendant in error to overcome the presumptions attaching to it by virtue of the statute, and no evidence being offered for that purpose his claim to the property which the deed conveyed failed.

That the contention of defendant in error—that plaintiffs in error had shown no title to the lot in question, for the reason that it did not appear that Landsberg, the lunatic, was a party to the chancery cause—cannot be sustained, has been clearly decided by this court in a number of cases holding that the lunatic in such a proceeding is not a necessary party, but is represented by his committee, who is, under the law, clothed with absolute power over and control of the lunatic (when not confined in an asylum or a jail), and his estate, together with authority to sue and be sued with respect to such estate. While in a proceeding affecting the property rights of an insane person, it is the duty of the court, if such insane person have no committee, to appoint a guardian *ad litem* to represent and protect his interests, where there is a committee the appointment of a guardian *ad litem* is wholly unnecessary, except only where there is conflict of interest between the committee and the lunatic. *Campbell* v. *Bowen,* 1 Rob. 252; *Hinton* v. *Bland,* 81 Va. 590; *Bolling* v. *Turner,* 6 Rand. 586; *Jackson* v. *Counts,* 106 Va. 11, 54 S. E. 870. In the first of these cases, the court clearly holds, that a guardian *ad litem* to superintend and pro-

tect the interest of the lunatic need only be appointed by the court in which a proceeding is taken affecting his property where he has no committee charged with the duty.

The reasoning in *Hinton* v. *Bland, supra,* for the view that an insane person is sufficiently represented in a suit against his committee, so fully states the result of the decisions of this and other courts answering the contention we are here considering, that we quote from the opinion somewhat at length, as follows: "The first objection, which relates to the refusal of the circuit court to appoint a guardian *ad litem* for the insane defendant, Anne O. Bland, on the motion of D. A. Hinton, her committee, is not well taken.   *   *   *

"The committee answered the bill, and not only was the suit reinstated, but, *quoad* the insane defendant, was in effect revived in the name of her committee; and the committee having been thus made a party, and there being no conflict of interest between the committee and the lunatic, the appointment of a guardian *ad litem* was unnecessary.

"The powers and duties of committees of insane persons are in Virginia prescribed by statute.   And by section 48 of chapter 82 of the Code of 1873 it is enacted, that 'the committee of an insane person shall be entitled to the custody and control of his person (when he resides in the State, and is not confined in an asylum or jail), shall take possession of his estate, and may sue and be sued in respect thereto,' etc.

"Under the statute it was held, in *Bird's Committee* v. *Bird,* 21 Gratt. 712, and in *Cole's Committee* v. *Cole's Admr.,* 28 Gratt. 365, that a suit on behalf of the lunatic respecting his person or estate must be in the name of the committee, if there be one.   And such, it would seem, is the general rule independently of statute.

"Infants, says Judge Story, institute a suit in equity by their next friend, but they defend by a guardian, who is appointed by the court for that purpose.   In respect to idiots and lunatics, however, the rule is different.   The latter, he observes,

'defend a suit by their committees, who are by an order of court appointed guardians *ad litem,* as a matter of course, in ordinary circumstances. But if an idiot or lunatic has no committee, or the committee has an interest opposite to that of the person whose property is entrusted to his care, an order may be obtained for appointing another person, as guardian *ad litem,* for the purpose of defending the suit.' Story's Eq. Pl., sec. 70.

"In *Brasher's Ex'ors* v. *Van Cortland,* 2 Johns. ch. 242, which was a suit against certain persons who had been appointed a committee of a lunatic, to obtain payment of a debt due by the lunatic, it was held that it was not necessary to join the lunatic with his committee as a party defendant. 'If he had been joined,' said Chancellor Kent, 'it would seem to be mere matter of form, and the committee would have been directed, as of course, to put in his answer as his guardians. It would have been their answer, though in his name. If he be made a defendant, he is to answer by his committee. * * * Though the books speak of the lunatic as a proper party, yet I do not perceive its necessity.'

"It is only where there is no committee, or where there is a conflict of interest between the committee and the lunatic, that it becomes necessary to appoint a guardian *ad litem* for an insane defendant. At all events, such is the law of this State, since not only is the estate of the lunatic entrusted to the committee, but by the express provision of the statute the latter may be sued in respect thereto. And it was, doubtless, with a view to provide for the contingency just mentioned that the statute was passed, upon which counsel rely, which enacts as follows: 'The proceedings in a suit wherein an infant or insane person is a party, shall not be stayed because of such infancy or insanity, but the court in which the suit is pending, or the clerk at rules, may appoint a guardian *ad litem* to any infant or insane defendant, whether such defendant shall have been served with process or not. The court may compel the person so appointed to act, but he shall not be liable for costs, and

shall be allowed his reasonable charges, which the party on whose motion he was appointed shall pay.' Code, 1873, chap. 167, sec. 17.

"This view is further supported by the provisions of section four, chapter 169 of the Code, which provides that a suit against a party who is insane may be revived in the name of the committee of such party, and thereafter proceeded in in the name of the committee. Here, no provision is made for the appointment of a guardian *ad litem,* and doubtless, for the reason that the suit being continued in the name of the committee, whose powers and duties are prescribed by the statute already adverted to, no such provision, in the judgment of the legislature, was necessary.

"We conclude, therefore, that the insane defendant was sufficiently represented in the suit by her committee, and that there was no error in overruling the motion for the appointment of a guardian *ad litem.*"

In *Straight* v. *Ice,* 56 W. Va. 60, 48 S. E. 838, the opinion says: "In Code 1819, vol. 1, c. 108, I see no provision for suit in the guardian's name, and whose Virginia cases were under that Code. Section 32 provided for suit in infant's name. Being in the same chapter, it showed that the infant only could sue. Nor do I see any provision for suit in the guardian's name in Code 1899, c. 82. The rule of these Virginia cases as to the guardians is still the rule in West Virginia. *Lawson* v. *Kirchner,* 50 W. Va. 344, 40 S. E. 344. But as to a committee of an insane person, a different statute applies. Code, 1899, c. 58, s. 37, says, that such committee 'shall take possession of his estate, and may sue and be sued in respect thereto, and for the recovery of debts due to or from the insane person.' This clearly enables the committee to sue in his own name for the recovery of a debt due the insane person from a former committee. That such is the capacity of a committee appears from *Johnson* v. *Chapman,* 43 W. Va. 639, 28 S. E. 744; *Bird's Committee* v. *Bird,* 21 Gratt. 712; *Hinton* v. *Bland's Admr.,* 81 Va. 588."

In an elaborate opinion by Strong, J., in *Yaple* v. *Titus,* 41 .Pa. 195, 80 Am. Dec. 604, which was an action of ejectment, · adhering to the principle that the judgment or order of a court of competent jurisdiction cannot be collaterally impeached or inquired into, the learned judge, following the statements, that "after the return of an inquisition finding lunacy, the jurisdiction over the property of the lunatic is complete, either for custody, for management or for sale," and "that an order of sale was a proceeding *in rem,* and not a decree against the lunatic himself, and to justify it the court needed no jurisdiction of his person," says: "The reason why even a judgment *in personam* is voidable in error is, because the party against whom it was rendered has been deprived of an opportunity of showing cause against the plaintiffs' claim. But in a proceeding *in rem* he may or may not intervene. As already said, in an application for an order to sell the real estate of a lunatic, the law does not contemplate his being heard." See also *Sullivan* v. *Andoe,* 6 Fed. (C. C.) 647; *Haddock* v. *Haddock,* 201 U. S. 569, 50 L. Ed. 869, 26 Sup. Ct. 525, and *Ballard* v. *Hunter,* 204 U. S. 254, 57 L. Ed. 471, 27 Sup. Ct. 261, where the same principle is fully recognized.

There is not a suggestion in this record of fraud on the part of Wm. S. Howard in the acquirement of the title to the property sought to be recovered, nor that he paid an inadequate price therefor.

If the contentions of defendant in error could be maintained, titles to property of insane persons, acquired through decrees of our courts having jurisdiction and authority to make such sales, would become very precarious, if not, as said in *Grignon* v. *Astor,* 2 How. 338, 11 L. Ed. 283, citing 2 Peters 169, 7 L. Ed. 381, "snares for honest men."

The deed from Tabb, commissioner, to Wm. S. Howard, offered in evidence in this case, purporting to convey the title and possession of the land in controversy under decrees of a court of competent and general jurisdiction, was *prima facie* evidence of the facts it recited, and no evidence being offered

by defendant in error to disprove those recitals, the judgment of the trial court in favor of the defendant in error was erroneous. Therefore its judgment will be reversed and annulled, and this court will enter the judgment that the trial court should have entered in favor of plaintiffs in error for the lot of land in controversy, with costs.

*Reversed.*